**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **LETICIA GUEST,**<br>**individually and on behalf of all**<br>**others similarly situated,** | |
| *Plaintiffs*, | **CIVIL ACTION FILE NO.** |
| **v.** | |
| **CHUCK'S FISH ATHENS, LLC., and**<br>**MITCHELL DANE HENDERSON,** | **JURY DEMAND**<br>**COLLECTIVE ACTION**<br>**CLASS ACTION** |
| *Defendants*. | |

## COMPLAINT

**NOW COMES** Leticia Guest (hereinafter "Plaintiff") and asserts this

Complaint against Defendants Chuck's Fish Athens, LLC (hereinafter "Chuck's,

LLC") and Mitchell Dane Henderson (hereinafter "Henderson") (hereinafter

collectively "Defendants") for violations of the Fair Labor Standards Act, 29

U.S.C. §201 *et. seq*. (hereinafter "FLSA" or "the Act") and Georgia law.  Plaintiff

states more fully as follows:

## INTRODUCTION

### 1.

Plaintiff worked for Defendants within three (3) years preceding the filing of

this Complaint.  Defendants failed and willfully refused to pay Plaintiff minimum

wages equal to or exceeding the amount required under the FLSA §6, 29 U.S.C.

§206. Plaintiff seeks, both for herself and for all other similarly situated employees, her unpaid wages for three (3) years preceding the filing of this Complaint (hereinafter "the Relevant Period"), liquidated damages, and her attorneys' fees and costs of litigation under the Act.

2.

More specifically, Defendants violated the Act in several specific ways. First, Defendants tacitly encouraged, and were aware of, Plaintiff's working off-the-clock due to the excessive side-work required of servers. Second, Defendants impermissibly paid service staff the tipped minimum wage for (a) improper side-work tasks, (b) excessive side-work tasks (greater than twenty percent (20%) of each work shift) and (c) non-contemporaneous side-work tasks. Third, Defendants violated the tip pool regulations in that (a) managers participated in and received money from the tip pool, (b) back-of-house employees illegally received tips from service staff, (c) no accurate description of the tip pool was ever provided to the service staff, (d) accurate records of gross tips received and the tip pool distribution were never kept and/or provided to the service staff, and (e) service staff was required to tip-out more than fifteen percent (15%) of their actual tips received. Fourth, Defendants have failed to keep and maintain the proper records required under the Act.

3.

Further, Defendants committed fraud under Georgia law. O.C.G.A. §51-6-2(b).   Defendants fraudulently inflated the dollar amount of cash tips allegedly paid to Plaintiff, claiming far higher amounts than were actually paid. Falsifying the cash tips paid to Plaintiff caused her to pay higher state and federal taxes, and, on information and belief, allowed Defendants to claim higher payroll expenses than they actually incurred thereby allowing Defendants to hide income.  The false cash tip amounts were (1) untrue, (2) known by Defendants to be untrue when stated by Defendants, (3) relied upon by Plaintiff in filing her state and federal tax returns (and used in calculating Plaintiff's FICA contributions), and (4) caused Plaintiff to pay more state and federal income taxes and FICA contributions than she would otherwise have been legally required to pay to her detriment.   Plaintiff seeks, on behalf of herself and the class of all servers employed in the two (2) years prior to this Complaint, damages equal to the excess FICA, state and federal taxes triggered by Defendants' excess, untrue and fraudulently reported cash tip amounts.

JURISDICTION

4.

Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*.  This Court has original jurisdiction pursuant to 29 U.S.C. §216(b), and 28

3

U.S.C. §1331, §1132(a)(1)(B), and §1337. The Court has pendent jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. §1367.

VENUE

5.

Defendant Chuck's, LLC a Georgia-based corporation with both its corporate office and restaurant at 220 West Broad Street, Athens, Clarke County, Georgia 30677. Chuck's, LLC may be served via its Registered Agent Henderson. Venue for this action properly lies in the Middle District of Georgia, Athens Division, pursuant to 28. U.S.C. §1391(b) and §1391(c)(2), and Local Rule 3.1, and 3.4, M.D. Ga.

DEFENDANTS' COVERAGE UNDER THE FLSA

Sub-Part 1: Chuck's LLC

6.

Chuck's LLC operates a restaurant located at 220 West Broad Street, Athens, Clarke County, Georgia 30677 (hereinafter "the Restaurant").

7.

Chuck's, LLC buys supplies and equipment, including fish, out of the stream of interstate commerce.

4

8.

Chuck's, LLC utilizes interstate credit/debit card processing in the course of its business.

9.

Chuck's LLC utilizes the interstate banking system in the course of its business.

10.

In calendar year 2019, Chuck's, LLC, had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

11.

For calendar year 2020, Chuck's, LLC, will have an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

12.

Chuck's, LLC, constitutes an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r),

§3(s)(1), §6(a) and §7(a) of the Act, 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a), for the years 2019 through 2020.

13.

For the calendar year 2019, Chuck's, LLC, was covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

14.

For the calendar year 2020, Chuck's, LLC, is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

15.

Chuck's, LLC, is an "employer" in an industry affecting commerce within the meaning of §3(d) of the Act, 29. U.S.C. §203(d).

16.

Chuck's, LLC, was an "employer" of Plaintiff as defined in §3(d) of the Act. 29 U.S.C. §203(d), in 2019 and 2020.

17.

During the relevant time period – 2019 through 2020 – Chuck's, LLC, constituted an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act. 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a).

## Sub-Part 2: Owner/Managers as "Employers"

### 18.

Henderson is an owner and/or shareholder in Chuck's, LLC.

### 19.

Henderson, along with other individuals, manages the day-to-day operations of Chuck's, LLC.

### 20.

Defendant Henderson acted and acts directly in the interest of Chuck's, LLC, in relation to Defendant Chuck's, LLC's employees such as Plaintiff. Thus, Henderson was an "employer" of the Plaintiff within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

## FACTS.

### Sub-Part 1: Basic Employment Facts.

### 21.

Plaintiff was employed by Defendants from approximately June 2019 to July 2020.

### 22.

During the Relevant Period, the Plaintiff was employed by the Defendants as a server.

23.

Chuck's, LLC operates the Restaurant to sell sushi, salads, and seafood in Athens, Georgia.

24.

While the exact hours of operation and hours of food service have varied slightly during the Relevant Period, in general, the dinner shift started at 3:00 PM Monday through Sunday, dinner food service started at 5:00 PM, and ended at either 10:00 PM (Monday through Thursday) or at 11:00 PM (Friday and Saturday). The shift ended when either a server was cut or all side work was completed, all cash drawers counted down, and all employees were released for the night. The Restaurant is closed on Sundays.

25.

While the foregoing paragraph describes the regular hours of operation, the Plaintiff's actual work hours depended on restaurant volume, job position worked, and the amount of side-work assigned.

26.

Chuck's, LLC, utilized a tip pool as that term is defined under the Act, *see e.g.*, 20 C.F.R. Sub-Part D, 29 C.F.R. §531.54 and 29 U.S.C. §203(m).

27.

Servers, such as Plaintiff. were paid $2.13 per hour plus tips.

<u>Sub-Part 2: Impermissible Side-Work Paid at Tipped Wage Rate.</u>

28.

Plaintiff worked off the clock due to the excessive and unrealistic side-work expectations of Chuck's, LLC. Chuck's, LLC, management was well-aware of the practice.

29.

Chuck's, LLC paid the Plaintiffs the "tipped minimum wage," i.e., $2.13 per hour, *see* 29 U.S.C. §203(m)(2), for ***all*** hours worked regardless of the tasks performed by the Plaintiff.

30.

Chuck's, LLC required the Plaintiff to perform a wide variety of "side work" tasks.

31.

Plaintiff, who worked the server position of "opener", was required to report and clock in at 3:00 PM. Openers were required to perform the following tasks (this list is not exhaustive):

(a) sweep and mop bathrooms;

(b) vacuum mats and replace mats;

(c) sweep and mop the inside dining area;

(d) sweep and use a leaf blower to clean the outside dining area;

9

(e) set up the outside dining area, including applying Murphy's wood oil soap to the dining room's wood surfaces, sanitize outside tables, and check and clean seats;

(f) set up all place settings at tables, including napkins, silverware, and glasses;

(g) polish and put away glasses and silverware;

(h) fold napkins;

(i) prepare the servers' station, including making tea, coffee, fill ice, fill water table carafes, set up drink machines, check and fill the dry stock, and prepare guest check postcards;

(j) check the cleanliness of bathrooms;

(k) water the outside plants;

(l) check the parking area and front sidewalk for cleanliness and sweep as necessary; and,

(m)    empty ashtrays in break area when needed.

32.

When Plaintiff worked as an "opener," she was generally cut at or about 8:30 PM, after the dinner rush.

Thus, when Plaintiff worked as an opener, she performed non-tipped side work for two (2) hours per shift (3:00 to 5:00) and performed tipped duties as a server for only three and one-half (3 ½) hours (5:00 to 8:30) in a five and one-half (5 ½) hour shift (3:00 to 8:30).

Plaintiff also worked the serving position known as "closer" which required her to report and clock in at 5:00 PM. Closers were required to, amongst other things, perform the following non-tipped tasks at the end of dinner shift (this list is not exhaustive):

(a) take the rubber mats outside to hang up and spray down;

(b) break down the drink machines;

(c) break down the tea and coffee machines;

(d) clean the employee and customer restrooms, including sanitizing toilets and sinks, taking out the trash, restocking toiletries, and cleaning mirrors;

(e) restock the to-go station with chopsticks, sugar, and straws;

(f) remove settings from the outside dining area, including wiping down tables, stacking chairs, folding, and stacking tables, and spot sweeping;

(g) remove settings from the inside dining area, including the place settings, wiping down tables, flipping chairs onto tables, and spot sweeping;

(h) take out the trash from the server station and expo stations;

(i) polish and put away the glasses and silverware;

(j) wipe down server stations;

(k) wipe out server sinks; and,

(l) break down window bus station, including switch from window to dish
    pit (take dirty glass racks to dish), make space at dish; take empty glass
    racks to dish to help out disher, sanitize bus cart, sanitize glass rack
    shelves, wipe down walls and dish window, take out linens, take out
    trash, empty splash bucket, and sweep and mop the bus station.

35.

As a "closer," Plaintiff started her shift at 5:00 PM and worked until the
Restaurant closed.  The Restaurant closed once dinner service ended, all side work
(for all servers) was completed, and the nightly tips accounted for and distributed
to the Plaintiff and other tipped employees. This process of closing the Restaurant
took approximately one-and-a-half (1 ½) to two (2) hours to complete after dinner
service ended at 10:00 or 11:00 PM (depending upon the day of the week).

36.

Thus, when Plaintiff worked as a closer, she performed non-tipped side work
for one and one-half (1 ½) to two (2) hours in a seven (7) to eight (8) hour shift.

37.

The amount of and list of side work tasks depended, in part, upon the job and station a server was assigned.

38.

The total amount of side work would typically be between one and one-half (1 ½) hour and two-and-a-half (2 ½) hours per shift.

39.

Much of the assigned side work occurred before and after service and was not performed incidental to the Plaintiff's service work.

40.

The total amount of time spent on side work typically exceeded twenty (20) percent of the total shift.

Sub-Part 3: Tip Pool Violations.

41.

Chuck's, LLC had a tip pool to which servers would contribute a percentage of gross sales, "hot" sales, bar sales less wine bottles, and sushi sales.

42.

Chuck's, LLC required servers, including Plaintiff, to tip the host 1% of gross sales.

43.

Chuck's, LLC required servers, including Plaintiff, to tip the busser 1% of gross sales.

44.

Chuck's, LLC required servers, including Plaintiff, to tip the food runners 1.5 % of hot sales, or the gross sale amount of food items ordered from the menu.

45.

Chuck's, LLC required servers, including Plaintiff, to tip the bartender 7.5% of all bar sales, i.e., alcohol, served by the server, not including the gross retail price of wine bottles sold by the server.

46.

Chuck's, LLC required servers, including Plaintiff, to tip the sushi bar workers, including the head sushi chef Vu Trahn (hereinafter "Chef Trahn"), 7.5% of sushi sales.

47.

Chuck's, LLC required servers, including Plaintiff, to tip the sushi bar workers 7.5% of sushi sales. Of the 7.5% of gross sushi sales, 60% went to the sushi runners, i.e., employees who delivered sushi dishes from the sushi bar to the customers, and 40% went to the sushi chef, generally Mr. Trahn, a salaried manager.

48.

Chuck's, LLC, employed a sushi chef, a salaried position, to oversee the
preparation of sushi dishes. The sushi chef regularly received tip outs from the
servers.

49.

Sushi chefs at Chuck's, LLC do not regularly engage with customers at the
Restaurant. To the extent sushi chefs at Chuck's, LLC engage with customers, it is
incidental.

50.

Sushi chefs at Chuck's, LLC do not regularly greet customers at the
Restaurant.

51.

Sushi chefs at Chuck's, LLC do not regularly take orders for customer's
food directly from the customer at the Restaurant.

52.

Sushi chefs at Chuck's, LLC do not regularly deliver food or beverages to
customers at the Restaurant.

53.

Sushi chefs at Chuck's, LLC are employed to primarily prepare sushi dishes
for customers at the Restaurant.

54.

Plaintiff regularly questioned Henderson why she had to tip the sushi chef; on one occasion, Henderson told Plaintiff that she was required to tip the sushi chef because "he cooks the food."

55.

Upon hiring and training, Chuck's, LLC provided the Plaintiff with some paperwork which may have included a tip pool description but did not allow Plaintiff to retain a copy of the tip pool description.

56.

Chuck's, LLC does have a point-of-sale system (hereinafter "POS") which tracked gross sales, hours, tips, and tip allocations.

57.

At the end of each shift Chuck's, LLC provided the Plaintiff with a daily POS report showing her gross sales, cash tips, credit card tips, and tip pool contributions. Plaintiff would attach her credit card receipts to the back of her individual daily POS report. Plaintiff would then give the daily POS report and credit card receipts to management of Chuck's, LLC. Chuck's LLC did not provide a copy of the daily POS report to the Plaintiff.

58.

Finally, the total daily tip out – which was based upon *gross sales* - to the tip pool by servers typically exceeded 15% of actual tips received, and thus the tip pool was *per se* not voluntary.

### Sub-Part 4: Uncompensated Time

59.

Plaintiff typically had to wait approximately fifteen (15) minutes after clocking-out post-shift for the manager on duty to distribute that evening's tips.

60.

Chuck's, LLC did not want the servers, such as Plaintiff, to leave the Restaurant without receiving their respective tips.

61.

When Plaintiff asked why Chuck's, LLC did not allow servers to leave without receiving their tips, her managers answered, "because what if something happens to them?" Furthermore, Chuck's, LLC generally refused to hold or keep the server's tips in the safe for safekeeping, thereby requiring the Plaintiff to wait to receive her tips.

## Sub-Part 5: Inflated Tip Income as Fraud

### 62.

Chuck's, LLC, reported Plaintiff's income (wages and tips) to the Internal Revenue Service (hereinafter "IRS") and Georgia Department of Revenue (hereinafter "GDOR").

### 63.

Chuck's, LLC, reported Plaintiff's income (wages and tips) to the IRS and GDOR through its payroll service provider as well as on her IRS Form W-2.

### 64.

Henderson accused Plaintiff of reporting no cash tips on her POS report and implied that the Plaintiff was underreporting cash tips to the IRS, GDOR and/or Chuck's, LLC.

### 65.

Plaintiff strenuously denied Henderson's claim that she was under-reporting her cash tips.

### 66.

Cash tips are rare, and most tips are paid by customers via their debit or credit cards.  Typically, Plaintiff did not receive more than $20.00 in cash tips during the course of a week (aside from one birthday party which tipped $100.00

but was divided with another server) and generally no more than one or two times a week would she receive a cash tip.

67.

Henderson, through a complicated formula never fully explained to Plaintiff, regularly falsified an amount which he reported as cash tips for each server. This amount had no connection to reality. (Hereinafter these falsified cash tips will be referred to as "Phantom Tip Income").

68.

Henderson met with Plaintiff and other servers regarding front-of-the-house tip issues at some point in late 2019. At this meeting, Henderson explained his process for calculating the Phantom Tip Income as: (1) determining the Restaurant's gross sales for a week; (2) multiplying this weekly gross sales amount by approximately 15% to 16%; and finally (3) dividing this sum by the number of servers employed in the particular workweek. This final number – each server's Phantom Tip Income - was then included on each server's compensation for the workweek.

69.

Chuck's, LLC reported the Phantom Tip Income, along with debit/credit card tips (which are captured by the POS), to its payroll processing company each pay period.

19

70.

As a result of the Defendants' fraudulent reporting of Phantom Tip Income, the servers, such as Plaintiff, paid an excessive amount of FICA, state and federal income taxes on income the servers never received.

71.

On information and belief, the Defendants deducted the Plaintiff's Phantom Tip Income as a business expense, as a part of their payroll cost deduction, thereby shifting to Plaintiff a portion of the Defendant's tax liability.

## COUNT I:  FAILURE TO PAY MINIMUM WAGE – EXCESSIVE & INAPPROPRIATE "SIDE-WORK"

72.

Plaintiff restates and reallege paragraphs one (1) through seventy-one (71), *supra*.

73.

Defendants' willful failure to pay Plaintiff, and all similarly situated employees, the full minimum wage for inappropriate side-work and for side-work exceeding twenty percent (20%) of each shift constitutes a violation of the §6 of the Act, 29 U.S.C. §206.

74.

Defendants owe Plaintiff, and all similarly situated employees, back wages, for both regular time and any overtime, in an amount to be determined at trial for all improperly paid side-work pursuant to 29 U.S.C. §206 and §216.

75.

Additionally, Defendants owe Plaintiff, and all similarly situated employees, liquidated damages in an equal amount for all improperly paid side-work pursuant to 29 U.S.C. §206 and §216.

COUNT II:  FAILURE TO PAY MINIMUM WAGE – TIP POOL VIOLATIONS

75.

Plaintiff restates and reallege paragraphs one (1) through seventy-one (71), *supra*.

76.

Defendants' willful violations of the U.S. Department of Labor's regulations governing tip pools, i.e., (a) allowing managers and/or back-of-house staff to participate, (2) failing to inform the Plaintiff of the terms of the tip pool, and (3) failing to distribute all of the tip pool to customarily tipped employees (and thus illegally retaining a portion of the tip pool for management), constitutes a violation of the §6 of the Act, 29 U.S.C. §206.

77.

Defendants owe Plaintiff, and all similarly situated employees, back wages in an amount to be determined at trial for (1) all illegally retained tips, (2) all tips distributed to back-of-house employees and managerial employees, and (3) for the full, non-tipped minimum wage for all hours worked as servers pursuant to 29 U.S.C. §206 and §216.

78.

Additionally, Defendants owe Plaintiff, and all similarly situated employees, liquidated damages in an equal amount for all illegally retained tips, all tips paid to back-of-house and managerial employees, and for all unpaid full (non-tip credit) minimum wages pursuant to 29 U.S.C. §206 and §216.

COUNT III: PHANTOM CASH TIPS AS FRAUD

79.

Plaintiff restates and realleges paragraphs one (1) through seventy-one (71), *supra*.

80.

Defendants intentionally falsified the amount of cash tips received by Plaintiff, and all similarly situated employees.

81.

Defendants reported these intentionally false receipts to various governmental entities, including the Social Security Administration, the Georgia Department of Labor, the Georgia Department of Revenue, and the Internal Revenue Service.

82.

Plaintiff, and all similarly situated employees, had no choice but to act upon these intentionally false receipts in that Plaintiff, and all similarly situated employees, paid excessive FICA, state and federal income taxes based upon the inflated income reported by the Defendants.

83.

Defendants' reporting of Plaintiff's wages and tips, including the falsified cash tip amount, was a material fact which determined the total amount of FICA and income taxes paid by the Plaintiff, and all similarly situated employees.

84.

As a result of Defendants' falsification of cash tips received by servers, the Plaintiff, and all similarly situated employees, has been and will continue to be damaged.

## COLLECTIVE ACTION – FLSA VIOLATIONS

### 85.

All of Defendants' violations of the Fair Labor Standards Act described herein are systemic policy or practice violations applicable to all servers employed during the Actionable Period. Thus, pursuant to §16 of the Act, 29 U.S.C. §216, Court-authorized notice should be issued to all servers employed by Defendant Chuck's, LLC during the Relevant Period.

## CLASS ACTION – FRAUD CLAIM

### 86.

Plaintiff brings this action on behalf of herself and all other similarly situated current and former employees of Defendants (hereinafter "the Class").

### 87.

The Class is defined as follows:

> All current and former employees of Defendant Chuck's Fish Athens, LLC, who, in the two (2) years preceding the filing of this lawsuit: (1) are or were employed as servers; and (2) had their reported cash tips falsely inflated.

### 88.

Plaintiff seeks to have the Class certified under FRCP 23(b)(2) and/or (b)(3).

89.

The members of the proposed Class are so numerous that joinder of all members is impractical.  During the relevant time-period, Defendants have employed dozens of servers.  Defendants' creation of Phantom Tip Income was systemic and applied to all servers.

90.

Plaintiff will fairly and adequately represent and protect the interests of the Class.  There are no conflicts between Plaintiff's claims and those of the Class, and Plaintiff's claims are typical of the claims of the Class members.

91.

There are common questions of law and fact applicable to all members of the Class which predominate over any individualized issues. Additionally, Defendant's policy of wholly falsifying the amounts of cash tips received by the servers is, by its very nature, a systemic pattern of fraud warranting uniform injunctive and declaratory relief.

92.

A class action under FRCP 23 is superior to all other available methods of adjudication.

## PRAYER FOR RELIEF

93.

Based upon the forgoing paragraphs, Plaintiff respectfully ask this Court to find and order the following:

A.  That the Court grant Plaintiff a trial by jury on all issues of fact;

B.  That the Court issue Notice to all similarly situated persons pursuant to §16 of the Act, 29 U.S.C. §216;

C.  That the Court certify this lawsuit as a Class Action under FRCP 23(b)(2) and/or FRCP 23(b)(3), and authorize the issuance of notice to all potential class members;

D.  That the Court find and declare that Defendant Mitchell Dane Henderson acted directly in the interest of Defendant Chuck's Fish Athens, LLC relation of the Plaintiff, and any other similarly situated class member, and that as such Defendant Mitchell Dane Henderson was an "employer" of Plaintiff, and any other similarly situated class member, within the meaning of §3(d) of the Act, 29 U.S.C. §203(d);

E.  That the Court find and declare that Defendant Chuck's Fish Athens, LLC, and Defendant Mitchell Dane Henderson, collectively, have violated the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*., have failed to properly pay the Plaintiff, and any other similarly situated class member, minimum wages as

required, and to have acted "willfully" thus entitling the Plaintiff, and any other similarly situated class member, to liquidated damages under the Act;

F.  That That Defendant Chuck's Fish Athens, LLC and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff, and any other similarly situated class member, back wages equaling the minimum required under §6 of the Act, 29 U.S.C. §206, for all applicable workweeks;

G.  That That Defendant Chuck's Fish Athens, LLC, and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff, and any other similarly situated class member, liquidated damages under the Act;

H.  That That Defendant Chuck's Fish Athens, LLC, and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff's, and any other similarly situated class member's, reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. §216; and,

I.  That Defendant Chuck's Fish Athens, LLC and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff, and any other similarly situated class member, the appropriate damages for fraud; and,

*(Continued On the Following Page)*

J. For such other and further relief as the Court finds just and appropriate.

Respectfully submitted this second (2nd) day of October, 2020.

_/s/ Peter H. Steckel_
Peter H. Steckel
Georgia Bar Number 491936
Counsel for Plaintiff

Steckel Law, L.L.C.
54 South Main Street
Watkinsville, Georgia 30677
(404) 717-6220
Email: peter@SteckelWorkLaw.com